United States District Court
Southern District of Texas

**ENTERED**

December 13, 2023

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

CHRISTOPHER THOMPSON,              §
                                   §
            Plaintiff,             §
                                   §
v.                                 §     CIVIL ACTION NO. H-21-3982
                                   §
WAL-MART STORES TEXAS, LLC,        §
                                   §
            Defendant.             §

## MEMORANDUM OPINION AND ORDER

Christopher Thompson ("Plaintiff") brought this action against Wal-Mart Stores Texas, LLC ("Defendant").[1]  Plaintiff alleges negligence claims against Defendant based on an alleged in-store collision involving Defendant's former employee.[2]  Plaintiff alleges negligence, negligent training, negligent hiring, negligent supervision, negligent retention, and gross negligence.[3] Among the motions pending before the court are Defendant Wal-Mart Stores Texas, LLC's Motion for Summary Judgment ("Defendant's Partial MSJ") (Docket Entry No. 41); Defendant Wal-Mart Stores Texas, LLC's 12(c) Motion for Partial Judgment on the Pleadings ("Defendant's Partial MJP") (Docket Entry No. 42); and Plaintiff's Amended Motion

---

[1]Plaintiff's First Amended Complaint ("Complaint"), Docket Entry No. 19.  For purposes of identification all page numbers reference the pagination imprinted at the top of the page by the court's Electronic Case Filing ("ECF") system.

[2]Id. at 2 ¶ 5.

[3]Id. at 2-5 ¶¶ 6-18.

for Partial Summary Judgment ("Plaintiff's Partial MSJ") (Docket
Entry No. 52). Defendant's Partial MSJ will be granted in part and
denied in part, Defendant's Partial MJP will be denied, and
Plaintiff's Partial MSJ will be denied.

## I.  **Background**

### A.  **Procedural History**

Plaintiff brought this action against Defendant on December 7,
2021.[4]  Plaintiff was shopping in Defendant's store on August 9,
2021.[5]  The Complaint alleges:

> While Plaintiff was standing inside of the store, an
> employee of Defendant, who was pushing a stocking cart
> through the aisles at a high rate of speed, pushed the
> stocking cart into Plaintiff.  As a result of Defendant's
> employee's actions and/or omissions, Plaintiff suffered
> serious injury to his still-recovering back [from recent
> back surgery] and other parts of his body.[6]

The employee has been identified as a former online grocery pickup
worker who the court will refer to as Herrera.  Plaintiff alleges
negligent training, negligent hiring, negligent supervision,
negligent retention, and vicarious liability for Herrera's alleged
negligence and gross negligence.[7]

Defendant Wal-Mart Stores Texas, LLC's Answer to Plaintiff's
First Amended Complaint ("Defendant's Answer") (Docket Entry

---

[4]Plaintiff's Original Complaint, Docket Entry No. 1.

[5]Complaint, Docket Entry No. 19, p. 3 ¶ 5.

[6]Id.

[7]Id. at 2-6.

No. 31) was filed on February 8, 2023. Defendant's Answer states: "Defendant asserts by way of affirmative defense that Plaintiff was the sole proximate cause of the incident in question."[8]

Defendant's Partial MSJ and MJP were filed on August 18, 2023, and Plaintiff responded to them on September 6 and 8, 2023, respectively.[9] Defendant has not replied. Defendant's Partial MSJ argues that there is no evidence to support essential elements of Plaintiff's claims for negligent training, negligent hiring, negligent supervision, negligent retention, and gross negligence.[10] In addition Defendant argues that under Texas law the respondeat superior doctrine is not a basis for imputing an employee's gross negligence to his employer.[11] Defendant's Partial MJP argues that the Complaint does not plausibly state claims for negligent training, negligent hiring, negligent supervision, negligent retention, and gross negligence.[12]

Plaintiff's Partial MSJ was filed on August 18, 2023; Defendant responded on September 7, 2023; and Plaintiff replied on

---

[8]Defendant's Answer, Docket Entry No. 31, p. 3 ¶ 23.

[9]Defendant's Partial MSJ, Docket Entry No. 41; Defendant's Partial MJP, Docket Entry No. 42; Plaintiff's Response to Defendant's Motion for Summary Judgment ("Plaintiff's MSJ Response"), Docket Entry No. 81; Plaintiff's Response to Defendant's 12(c) Motion for Partial Judgement on the Pleadings ("Plaintiff's MJP Response"), Docket Entry No. 87.

[10]Defendant's Partial MSJ, Docket Entry No. 41, p. 4 ¶ 10, p. 11 ¶ 36.

[11]Id. at 10 ¶ 34.

[12]Defendant's Partial MJP, Docket Entry No. 42, p. 2 ¶ 5.

September 14, 2023.[13]   Plaintiff argues that Defendant has no evidence to support its defense that Plaintiff was "the sole proximate cause" of his injuries.[14]

**B.   Summary Judgment Evidence**

In opposing Defendant's Partial MSJ, Plaintiff relies on Herrera's deposition.[15]   Herrera has been diagnosed with autism spectrum disorder (ASD) and attention deficit hyperactive disorder (ADHD) and states that he has anxiety.[16]   Herrera has a high school diploma.[17]   Herrera was 18 years old when Defendant hired him and when the incident occurred.[18]   Herrera previously worked at a Wendy's and a Dollar Tree.[19]   Herrera voluntarily left Wendy's after less than a week because he "wasn't able to do the job."[20]   Herrera

---

[13]Plaintiff's Partial MSJ, Docket Entry No. 52; Defendant Wal-Mart Stores Texas, LLC's Response in Opposition to Plaintiff's Amended Motion for Partial Summary Judgment ("Defendant's MSJ Response"), Docket Entry No. 83; Plaintiff's Reply to Defendant's Response to Plaintiff's Amended Motion for Partial Summary Judgment ("Plaintiff's MSJ Reply"), Docket Entry No. 99.

[14]Plaintiff's Partial MSJ, Docket Entry No. 52, p. 1 ¶ 2.

[15]Plaintiff's MSJ Response, Docket Entry No. 81, pp. 3-9 (citing Videotaped Videoconference Oral Deposition of Cortland Herrera ("Herrera Depo."), Exhibit A to Plaintiff's MSJ Response, Docket Entry No. 81-1).

[16]Herrera Depo., Exhibit A to Plaintiff's MSJ Response, Docket Entry No. 81-1, p. 8 lines 13-23, p. 10 line 14.

[17]Id. at 8 lines 24-25, p. 9 lines 1-8.

[18]Id. at 7 lines 23-24, p. 13 lines 12-15.

[19]Id. at 9 line 14, p. 10 lines 23-25.

[20]Id. at 10 lines 3-10.

stated: "I get easily overwhelmed, and I daydream when I get overwhelmed. And Wendy's was very overwhelming, so I couldn't do the simple tasks there."[21] Shortly after leaving Wendy's, Herrera started working at Dollar Tree, restocking items.[22]

Herrera filled out an online application for a job with Defendant and received a call some weeks or months later.[23] Herrera voluntarily left Dollar Tree to work for Defendant.[24] Herrera started with Defendant in July of 2021, working as an "OGP Associate" or personal shopper.[25]

Herrera stated that someone with Defendant called regarding the job and gave a time to show up at Defendant's store.[26] Herrera stated that he showed up, gave his identification, and did some training on computers.[27] But Herrera stated that he does not remember an interview.[28] Defendant cites the deposition of Collin Williams, who states that Defendant has a standard hiring process that includes two interviews and a background check.[29] Herrera

---

[21] Id. lines 8-10.

[22] Id. at 11 lines 6-9.

[23] Id. at 22 lines 20-25, p. 23 lines 1-5.

[24] Id. at 11 lines 22-25, p. 12 lines 1-2.

[25] Id. at 13 lines 12-15, p. 12 lines 17-19, p. 13 lines 3-5.

[26] Id. at 24 lines 24-25, p. 25 lines 1-7.

[27] Id. at 25 lines 8-13.

[28] Id. at 23 lines 23-25, p. 24 lines 1-3, p. 25 lines 14-21.

[29] Videotaped Videoconference Oral Deposition of Collin Williams, Exhibit D to Defendant's Partial MSJ, Docket Entry No. 41-4, p. 4 lines 2-24.

-5-

states that he was never asked about and never disclosed his mental health conditions to Defendant.[30]

Herrera's job was to gather items from the store to fill customers' online orders.[31]  Defendant trained Herrera to use its main stocking carts and its handheld device for scanning and labeling items.[32]  The device would tell Herrera what items to get and what path to take, and Herrera's managers expected him to maintain a certain "pick rate," which Herrera remembered to be about 90 items in 30 to 40 minutes.[33]  Herrera stated that he kept a quick pick rate and that the managers "never got on me for my timing because I did my best to prevent that from happening."[34]  However, he felt pressure to keep a quick pick rate because he saw managers talk to others with slower pick rates.[35]

Herrera states that working at the store negatively affected his mental health.[36]  Two contributing factors were the store's low staffing and the expected pick rate.[37]  At some point Herrera told

---

[30]Herrera Depo., Exhibit A to Plaintiff's MSJ Response, Docket Entry No. 81-1, p. 25 lines 22-25, p. 26 lines 12-14.

[31]Id. at 27 lines 4-8.

[32]Id. at 28 lines 20-24, p. 29 lines 12-20.

[33]Id. at 32 lines 21-25, p. 33 lines 21-23, p. 39 lines 15-18.

[34]Id. at 35 lines 3-5, p. 43 lines 2-8.

[35]Id. at 35 lines 6-8, p. 43 lines 6-12.

[36]Id. at 14 lines 5-8.

[37]Id. lines 1-4, p. 43 lines 13-21.

a manager that the work was negatively affecting his mental health, but Herrera remembers this conversation being in October or November of 2021, several months after the incident with Plaintiff.[38]

On the day of the alleged collision, Herrera was gathering items with a different stocking cart for oversized items.[39] Herrera did not receive separate training on how to use the oversized-item cart.[40] When asked to describe the incident with Plaintiff, Herrera stated:

> I was using the oversized cart, and I didn't know how to correctly and comfortably use it.  And I picked all the items I needed, and I was pushing the cart and something fell off the cart, and I went to go pick it up and the cart turned, like, towards [Plaintiff].  And I didn't expect that to happen.  It doesn't -- it didn't turn the way I had expected it to.[41]

Herrera described his pace of pushing the cart as "quick."[42]  There is conflicting evidence as to whether the result was a collision or a near-collision.  Herrera did not remember his cart hitting Plaintiff or Plaintiff's cart.[43]  Plaintiff testified that Herrera's cart struck his cart, which he was leaning on, and that his "body

---

[38]Id. at 14 lines 22-25, p. 15 lines 1-2, 16-20.

[39]Id. at 31 lines 4-19.

[40]Id. lines 20-22.

[41]Id. at 44 lines 14-19.

[42]Id. lines 20-22.

[43]Id. at 49 line 3.

was torqued from the impact and twisted."[44]   Defendant's
biomechanics· expert Dr. Funk concluded from surveillance video that
when Herrera's cart approached or struck Plaintiff's cart,
Plaintiff made a sudden move, flexing his torso away from the cart[45]
and that Herrera's cart had slowed to about two miles per hour when
Plaintiff made this movement.[46]

## II.   **Legal Standard**

**A.   Summary Judgment**

"The court shall grant summary judgment if the movant shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law." Fed. R. Civ.
P. 56(a).  A party asserting that a fact is or is not genuinely
disputed must support the assertion by "citing to particular parts
of materials in the record." Fed. R. Civ. P. 56(c)(1)(A).  Summary
judgment is proper "after adequate time for discovery and upon
motion, against a party who fails to make a showing sufficient to
establish the existence of an element essential to that party's
case, and on which that party will bear the burden of proof at
trial." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).
"[T]he burden on the moving party may be discharged by 'showing' —

---

[44]Oral Deposition of Christopher Thompson, Exhibit B to
Defendant's MSJ Response, Docket Entry No. 83-2, p. 3 lines 16-23.

[45]Dr. Funk's Expert Report, Exhibit D to Defendant's MSJ
Response, Docket Entry No. 83-4, p. 12.

[46]Id.

that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." Id. at 2554.

## B.   Judgment on the Pleadings

Under Federal Rule of Civil Procedure 8(a), a "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1). "To survive a motion to dismiss [under this pleading standard], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)). "[T]he standards for deciding motions under [Rule 12(b)(6) and Rule 12(c)] are the same." Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 313 n.8 (5th Cir. 2002). "'[I]t is well-settled that it is within the district court's discretion whether to accept extra-pleading matter on a motion for judgment on the pleadings and treat it as one for summary judgment or to reject it and maintain the character of the motion as one under Rule 12(c).'" Van Duzer v. U.S. Bank National Association, 995 F. Supp. 2d 673, 684 (S.D. Tex. 2014) (quoting McBurney v. Cuccinelli, 616 F.3d 393, 410 (4th Cir. 2010)). Courts have cast doubt on the validity of Rule 12(c) motions filed after substantial or completed discovery. See Grajales v. Puerto Rico

-9-

Ports Authority, 682 F.3d 40, 46 (1st Cir. 2012) ("Ignoring the entire panoply of facts developed during discovery makes little sense."); In re Waggoner Cattle, LLC, Case No. 18-20126-RLJ-11, 2022 WL 5264707, at *2 (Bankr. N.D. Tex. April 28, 2022) (denying motion for judgment on the pleadings because discovery had closed and summary judgment motions were pending).

## III. **Analysis**

### A. **Defendant's Motion for Partial Judgment on the Pleadings**

Defendant's Partial MJP was filed on the same day as Defendant's MSJ and challenges the same claims — negligent training, negligent hiring, negligent supervision, negligent retention, and gross negligence. Defendant argues that the Complaint does not allege facts to plausibly state these claims. Since the parties have fully briefed Defendant's Partial MSJ, disposing of these claims on the adequacy of the pleadings would not be proper since the adequacy of the pleadings would be moot for any claim that fails summary judgment scrutiny. See Grajales, 682 F.3d at 46. For any claim that survives summary judgment scrutiny, dismissal based on inadequate pleading would merely result in needless delay. Plaintiff could amend the Complaint to allege whatever facts preclude summary judgment — evidence which Defendant already knows about from discovery and the summary judgment briefing. For these reasons, Defendant's Partial MJP will be denied.

-10-

**B.   Defendant's Motion for Partial Summary Judgment**

Defendant seeks summary judgment on Plaintiff's claims for negligent training, negligent hiring, negligent supervision, negligent retention, and gross negligence.

1.   <u>Negligent Training</u>

The Texas Supreme Court has not ruled on the existence or scope of a negligent training tort. <u>See Elephant Insurance Co., LLC v. Kenyon,</u> 644 S.W.3d 137, 141 n.4 (Tex. 2022). But some Texas courts of appeals have held that an employer has a duty to "adequately hire, train, and supervise employees" and that "[t]he negligent performance of those duties may impose liability on an employer . . ." <u>Castillo v. Gared, Inc.,</u> 1 S.W.3d 781, 786 (Tex. App.—Houston [1st Dist.] 1999). "The elements of a cause of action for negligently . . . training . . . an employee are the following: (1) the employer owed the plaintiff a legal duty to . . . train . . . competent employees; (2) the employer breached that duty; and (3) the breach proximately caused the plaintiff's injury." <u>Wal-Mart Stores, Inc. v. Sanchez,</u> Civil No. 04-02-00458, 2003 WL 21338174, at *5 (Tex. App.—San Antonio June 11, 2003). "To establish a claim for negligent training, a plaintiff must prove that a reasonably prudent employer would have provided training beyond that which was given . . ." <u>Dangerfield v. Ormsby,</u> 264 S.W.3d 904, 912 (Tex. App.—Fort Worth 2008).

-11-

Defendant argues that Plaintiff lacks evidence that any additional training was reasonably required.[47] Plaintiff responds that more training was required because of Herrera's age and limited work experience and because of the nature of the oversized-item cart. Plaintiff does not cite evidence about the cart's size or weight. Herrera stated, however, that he "didn't know how to correctly and comfortably use it," which suggests it was somehow unwieldy or difficult to use.[48] Moreover, Herrera testified that the cart turned in a way that he did not intend.[49] Defendant's biomechanics expert Dr. Funk stated that the cart's wheel layout causes tighter turns than an ordinary shopping cart.[50] A reasonable jury could conclude that the oversized-item cart was unwieldy and that a reasonable employer would have trained employees how to safely use it. Moreover, a jury could conclude that the lack of training proximately caused Plaintiff's alleged injuries. Taking Herrera's account as true, the turn was attributable to his unfamiliarity with the cart — not any physical inability to steer it. Therefore, Defendant's Partial MSJ will be denied as to Plaintiff's negligent training claim.

---

[47]Defendant's Partial MSJ, Docket Entry No. 41, p. 6 ¶¶ 15, 17.

[48]Herrera Depo., Exhibit A to Plaintiff's MSJ Response, Docket Entry No. 81-1, p. 44 lines 14-15.

[49]Id. lines 14-19.

[50]Dr. Funk's Expert Report, Exhibit D to Defendant's MSJ Response, Docket Entry No. 83-4, p. 5.

2.    Negligent Hiring and Retention

"An employer owes a duty . . . to the general public to ascertain the qualifications and competence of the employees it hires, especially when the employees are engaged in occupations that require skill or experience and that could be hazardous to the safety of others." Morris v. JTM Materials, Inc., 78 S.W.3d 28, 49 (Tex. App.—Fort Worth 2002). "Therefore, an employer is liable for negligent hiring . . . if it hires an incompetent or unfit employee whom it knows, or by the exercise of reasonable care should have known, was incompetent or unfit, thereby creating an unreasonable risk of harm to others." Id. "Negligence in hiring requires that the employer's 'failure to investigate, screen, or supervise its [hirees] proximately caused the injuries the plaintiffs allege.'" Fifth Club, Inc. v. Ramirez, 196 S.W.3d 788, 796 (Tex. 2006) (quoting Doe v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d 472, 477 (Tex. 1995)).   A fact issue does not exist regarding an employee's competence merely because his qualifications are not perfect.   See Goodyear Tire and Rubber Co. v. Mayes, 236 S.W.3d 754, 758 (Tex. 2007) (two traffic tickets and one collision were insufficient to raise genuine issue of material fact regarding employee's competence as driver).

Defendant argues that Plaintiff's negligent hiring claim fails because he has not identified any evidence that Herrera's background made him incompetent for the job or that the alleged

failure to screen him proximately caused the alleged injuries.[51]
Plaintiff responds that Defendant failed to interview Herrera and
should have discovered his employment history and mental health.

The court concludes that Herrera's employment history and
mental health do not raise a fact issue regarding competence for
the job of personal shopper. The evidence does not indicate that
the job requires advanced skills or experience or that it is
particularly hazardous to others' safety. Although there is
evidence that Herrera is unusually prone to stress and that the
job's stress worsened his mental health, Plaintiff does not cite
any evidence that Herrera's mental health made him unable to safely
accomplish the job duties of a personal shopper. Herrera's
managers never criticized his pick rate, the only apparent job
incident is the alleged collision with Plaintiff, and none of the
accounts of the incident suggest that it had anything to do with
Herrera's mental health symptoms. Even Herrera, who was very
forthcoming about his mental health in his deposition, attributed
the incident to his unfamiliarity with the oversized-item cart and
its unexpected turn. The evidence is not sufficient to raise a
genuine issue of material fact regarding his competence for this
job. See Goodyear Tire and Rubber Co., 236 S.W.3d at 758.

For the same reasons, Plaintiff lacks evidence to prove
proximate cause. Plaintiff cites no evidence that Herrera's

---

[51]Defendant's Partial MSJ, Docket Entry No. 41, p. 7 ¶ 21.

symptoms played a role in his brief loss of control of the cart. Proximate cause cannot be inferred from the presence of Herrera's mental health conditions alone.  Defendant's Partial MSJ will be granted as to Plaintiff's negligent hiring claim.

The negligent retention theory is similar to negligent hiring except that a plaintiff must show the employer knew or reasonably should have known information about an employee that made them unfit and warranted firing.  See CoTemp, Inc. v. Houston West Corp., 222 S.W.3d 487, 492 (Tex. App.—Houston [14th Dist.] 2007). Plaintiff has not cited any evidence about Herrera's performance in between his hiring and the alleged collision.  Therefore, Defendant's Partial MSJ will be granted as to Plaintiff's negligent retention claim.

### 3.   Negligent Supervision

The Texas Supreme Court has not ruled on the existence or scope of a negligent supervision claim.  Waffle House, Inc. v. Williams, 313 S.W.3d 796, 804 n.27 (Tex. 2010).  But some Texas courts of appeals have entertained negligence claims premised on a duty to supervise employees.  See Knight v. City Streets, L.L.C., 167 S.W.3d 580, 584 (Tex. App.—Houston [14th Dist.] 2005).  To prevail, a plaintiff must show that "(1) [the defendant] owed [the plaintiff] a legal duty to supervise its employees; (2) [the defendant] breached that duty; and (3) that breach proximately caused [the plaintiff's] injuries."  Id.  Defendant argues that it

had no reason to suspect that supervision was necessary. The court agrees. Although some evidence supports the need for modest training, Plaintiff does not cite any evidence that the task at issue, using the oversize-item cart, could not be done safely without supervision. Therefore, Defendant's Partial MSJ will be granted as to Plaintiff's negligent supervision claim.

### 4. Gross Negligence

In Texas a corporation may be assessed exemplary damages if it committed gross negligence. Hammerly Oaks, Inc. v. Edwards, 958 S.W.2d 387, 389 (Tex. 1997). Texas law defines gross negligence as "an act or omission:

> (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and
>
> (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others."

Tex. Civ. Prac. & Rem. Code § 41.001(11). Gross negligence of an employee cannot be imputed to the employer via respondeat superior. Hammerly Oaks, 958 S.W.2d at 390. Instead, the employer must have previously authorized or subsequently approved the grossly negligent conduct. Id. at 391.

Defendant argues that Plaintiff's gross negligence claim fails as a matter of law because it cannot be imputed via respondeat superior and because Defendant did not authorize or approve

-16-

Herrera's allegedly negligent conduct. Plaintiff responds that it was grossly negligent to hire Herrera, that it was grossly negligent to authorize Herrera's use the oversized-item cart without training him, and that Defendant ratified Herrera's negligent conduct by not disciplining him after the incident.[52] The court is not persuaded. As explained above, the evidence does not support a negligent hiring claim, much less grossly negligent hiring. And although the court did not grant summary judgment on Plaintiff's negligent training claim, the evidence does not support a finding that the lack of training was grossly negligent since gross negligence must be proven by clear and convincing evidence. Tex. Civ. Prac. & Rem. Code Ann. § 41.003. Moreover, Plaintiff cites no authority holding that an employer ratifies an employee's negligent conduct by not disciplining him. For these reasons, Defendant's Partial MSJ will be granted as to Plaintiff's gross negligence claim.

## C. Plaintiff's Motion for Partial Summary Judgment

Plaintiff seeks summary judgment on Defendant's defense that Plaintiff was the "sole proximate cause" of his injuries.[53] Plaintiff states that this defense should be construed as a contributory negligence defense and that Defendant has no evidence that Plaintiff was negligent.[54] Texas has abandoned the "all-or-

---

[52]Plaintiff's MSJ Response, Docket Entry No. 81, pp. 8-9 ¶ 18.

[53]Plaintiff's Partial MSJ, Docket Entry No. 52, p. 1 ¶¶ 1-2.

[54]Id. at 3-4 ¶¶ 10-11; Plaintiff's MSJ Reply, Docket Entry No. 99, p. 2.

nothing system of contributory negligence," under which "a plaintiff [who] was even one percent at fault . . . could not recover." <u>Nabors Well Services, Ltd. v. Romero</u>, 456 S.W.3d 553, 559 (Tex. 2015). Texas law instead applies proportionate responsibility, which means that fault is apportioned among all negligent parties, including the plaintiff, except that a plaintiff may not recover damages if his percentage of responsibility is greater than 50 percent. Tex. Civ. Prac. & Rem. Code Ann. §§ 33.001, 33.003. Therefore, the court will construe the challenged defense as a claim that Plaintiff was negligent and that his injuries were caused in whole or in part by his own negligence.

Defendant argues that Plaintiff proximately caused his own injuries because (1) the cart never collided with Plaintiff or his cart[55] and (2) Plaintiff was negligent in shopping at Defendant's busy store while still recovering from back surgery.[56] In support of the first argument, Defendant cites Herrera's testimony and Dr. Funk's analysis that the oversized-item cart did not collide with Plaintiff or his cart, surveillance photos that Defendant argues corroborate this, and Dr. Funk's analysis that the cart had slowed to two miles per hour when Plaintiff reacted.[57] Based on

---

[55]Defendant's MSJ Response, Docket Entry No. 83, pp. 4-6 ¶¶ 14-18.

[56]<u>Id.</u> at 6-7 ¶¶ 19-24.

[57]Plaintiff objects to the consideration of Dr. Funk's expert report because it is unsworn. However, "[n]ew Rule 56(c), added in (continued...)

-18-

this evidence, a jury could reasonably conclude that no collision occurred, that the force of a collision, if any, was minimal, or that the cart was going so slowly that dodging was not necessary to avoid injury.

Defendant's second argument also may have merit. Plaintiff relies on the eggshell skull rule, which states "that a tortfeasor takes the plaintiff as he finds her." Otis Spunkmeyer, Inc. v. Blakely, 30 S.W.3d 678, 689 (Tex. App.—Dallas 2000). In other words, a frail plaintiff's damages are those he suffered — not the hypothetical damages that an ordinary, less fragile person would have suffered. But the eggshell skull rule is a damages doctrine. In determining whether Plaintiff was negligent, the standard of care is "what a reasonable person like [Plaintiff] would have done under the same or similar circumstances — to protect against unreasonable risk of harm." Union Pacific Railroad Co. v. Nami, 498 S.W.3d 890, 896 (Tex. 2016). "If the actor is ill or otherwise physically disabled, the standard of conduct to which he must conform to avoid being negligent is that of a reasonable man under like disability." Restatement (Second) of Torts § 283C. Dr. Funk states that Plaintiff "experienced lumbar compression in this incident that was similar to everyday activities such as running,

---

[57](...continued)
2010, permits a party to support or dispute summary judgment through unsworn declarations, provided their contents can be presented in admissible form at trial." Patel v. Texas Tech University, 941 F.3d 743, 746 (5th Cir. 2019). This applies to expert reports. See id. at 747.

sneezing, lifting a 25 pound box from the ground, or plopping in a chair."[58]  Moreover, Plaintiff does not dispute that his back was fragile; he invokes the eggshell skull rule.[59]  A reasonable jury could conclude that shopping in Defendant's store at his stage of recovery was negligent and that his injuries were proximately caused in whole or in part by that decision.  Plaintiff's Partial MSJ will be denied.

## IV.   Conclusion and Order

Plaintiff has not cited evidence to support his claims for negligent hiring, negligent retention, negligent supervision, and gross negligence, but Plaintiff has cited evidence satisfying the essential elements of negligent training.  Defendant Wal-Mart Stores Texas, LLC's Motion for Summary Judgment (Docket Entry No. 41) is therefore **GRANTED** as to negligent hiring, negligent retention, negligent supervision, and gross negligence and **DENIED** as to negligent training.  Because Defendant's Rule 12(c) arguments are moot or improper at this stage of litigation, Defendant Wal-Mart Stores Texas, LLC's 12(c) Motion for Partial Judgment on the Pleadings (Docket Entry No. 42) is **DENIED**.  Because Defendant has cited evidence that creates a fact issue as to Plaintiff's own

_____

[58]Dr. Funk's Expert Report, Exhibit D to Defendant's MSJ Response, Docket Entry No. 83-4, p. 9.

[59]Amended Joint Pretrial Order, Docket Entry No. 73, p. 3.

negligence, Plaintiff's Amended Motion for Partial Summary Judgment (Docket Entry No. 52) is **DENIED**.

Docket call will be held on January 12, 2024, at 3:00 p.m. in Court Room 9-B, 9th Floor, United States Courthouse, 515 Rusk Street, Houston, Texas.

**SIGNED** at Houston, Texas, on this 13th day of December, 2023.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE